UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____         │
│ DATE FILED: 03/14/2024               │
└─────────────────────────────────────┘
```

SAMUEL MUNIZ III,

                              Plaintiff,

        v.

ORANGE COUNTY, TRINITY SERVICES
GROUP, INC., SYDNEY LUCKNER, and
CORRECTIONAL OFFICER SELLERS,

                              Defendants.

22 CV 529 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

        On March 27, 2023, the Court issued an Opinion & Order (the "Opinion," ECF No. 57)

dismissing pursuant to Federal Rule of Civil Procedure 12(b)(6) all claims asserted by Plaintiff

Samuel Muniz III against Defendants Orange County and Correctional Officer Sellers ("Sellers")

(collectively, the "County Defendants") as well as against Trinity Services Group, Inc.

("Trinity").[1] Before the Court is Plaintiff's motion for reconsideration of the Opinion. For the

following reasons, Plaintiff's motion for reconsideration is granted and the Opinion granting

dismissal of Plaintiff's Complaint is vacated. Upon reconsideration, the County Defendants' and

Trinity's motions to dismiss are granted.

---

[1] In the Opinion, the Court did not address the claims against Defendant Sydney Luckner as he had failed to answer or otherwise appear in the action. On February 24, 2023, the Court issued an Order to Show Cause for the entry of a default judgment as to Luckner, ordering that he show cause before the Court on March 28, 2023 why an order should not be issued pursuant to Federal Rule of Civil Procedure 55(b)(2) entering a default judgment against him for failure to answer or otherwise appear in the action. (ECF No. 51.) On March 28, 2023, the Court held the Show Cause Hearing. Luckner appeared at the Hearing and notified the Court of his intention to file an answer to Plaintiff's Complaint, and the Court set a briefing schedule for Luckner to file a motion to vacate the Clerk's Certificate of Default. (*See* ECF No. 60.) In lieu of filing a motion to vacate default, Luckner filed his Answer to Plaintiff's Complaint. (ECF No. 63.) On May 2, 2023, Plaintiff filed a letter motion requesting that the Court direct the Clerk of the Court to strike Luckner's answer and issue an order entering the default. (ECF No. 66.) In light of Luckner's *pro se* status, on February 5, 2024, the Court struck Luckner's Answer, but in lieu of entering the default judgment, again directed Luckner to file a motion to vacate. (ECF No. 67.) On March 7, 2024, Luckner filed a letter with the Court stating that his name is Luckner Sydney and that he was never properly served with the summons and Complaint.

## BACKGROUND

The Court assumes familiarity with the facts of the case and the substance of the Opinion, and briefly restates here only those facts relevant to the pending motion for reconsideration.

Plaintiff commenced this action via Complaint against the County Defendants, Trinity, and Defendant Luckner Sydney[2] ("Luckner") pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging federal and state law claims for assault, excessive force, failure to intervene, and *respondeat superior* liability. ("Compl.," ECF No. 1.) Plaintiff, an inmate at Orange County Correctional Facility ("OCCF"), alleged that Luckner, an employee at Trinity, assaulted Plaintiff and caused him to sustain a black eye, bruising, damages to several teeth, lower back injuries, and fractures to the metal plate in his jaw.[3] Trinity had been contracted to provide food services to inmates at OCCF, and Lucker supervised inmates assigned to kitchen and food services duties, including Plaintiff. Sellers, an Orange County correctional officer assigned to the OCCF kitchen and food service area, could hear the assault but nevertheless failed to intervene to stop it.

On June 17, 2022 and August 5, 2022, the County Defendants and Trinity, respectfully, moved to dismiss Plaintiff's Complaint. On March 27, 2023, the Court issued the Opinion dismissing Plaintiff's claims on the grounds that (1) Plaintiff had failed to plead facts sufficient to establish *Monell* liability against Orange County; (2) Plaintiff could not assert a failure to intervene claim against Sellers because Luckner's assault was not a primary violation of Plaintiff's constitutional rights; and (3) Plaintiff failed to plead sufficient facts for the Court to reasonably infer that Sellers failed to intervene. *Muniz v. Orange Cnty.*, No. 22 CV 529 (NSR), 2023 WL 2648776, at *4-6 (S.D.N.Y. Mar. 27, 2023). Finally, having dismissed Plaintiff's federal claims,

---

[2] During the Show Cause Hearing held on March 28, 2023, Luckner informed the Court and counsel that his true name is Luckner Sydney. For consistency, the Court will continue to refer to him as Luckner.

[3] The metal plate in Plaintiff's jaw is from a prior injury.

the Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims for assault and excessive force. (*Id.* at 11.)

On March 28, 2023, Plaintiff filed a Motion for Reconsideration before the Court.[4] ("Pl. Mot.," ECF No. 58.) Plaintiff argues the Court committed clear error in dismissing Plaintiff's claims based on its failure to plead the elements of a Section 1983 claim pursuant to *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Put another way, Plaintiff alleges the Court misconstrued Plaintiff's Complaint to assert *Monell* claims and on this basis improperly dismissed its federal claims and declined to exercise supplemental jurisdiction over its state claims. The Court agrees with Plaintiff and grants his motion for reconsideration. Accordingly, the Court reconsiders the County Defendants' and Trinity's motions to dismiss on the merits.

## LEGAL STANDARD

### I.    Motion for Reconsideration

Motions for reconsideration are governed by Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b). The standard for granting a reconsideration motion is strict. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Doe v. N.Y. City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983). The motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." *In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 311-12

---

[4] On March 28, 2023, Plaintiff filed its Motion for Reconsideration. ("Pl. Mot.," ECF No. 58.) On April 18, 2023, with leave of the Court, Trinity served its response in Opposition (Lane Decl.," ECF No. 61) and the County Defendants served their response in Opposition ("Lagitch Decl.," ECF No. 62). On April 25, 2023, Plaintiff filed its Reply Affidavit in response to the County Defendants ("Goldberg Reply to County Defs.," ECF No. 64) and Trinity ("Goldberg Reply to Trinity," ECF No. 65).

(S.D.N.Y. 2012) (internal citation omitted); *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly . . . ." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal citation omitted); *see In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (noting that reconsideration should be used sparingly "in the interests of finality and conservation of scarce judicial resources"). A motion for reconsideration "is not a vehicle for . . . presenting the case under new theories . . . or otherwise taking a second bite at the apple." *Analytical Surveys, Inc.*, 684 F.3d at 52 (quotation and citation omitted). Nor is such a motion "an occasion for repeating old arguments previously rejected . . . ." *RSM Prod. Corp. v. Fridman*, No. 06-CV-11512, 2008 WL 4355406, at *2 (S.D.N.Y. Sept. 23, 2008) (internal quotation marks omitted).

These motions are "addressed to the sound discretion of the district court . . . ." *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) *aff'd sub nom. Gollust v. Mendell*, 501 U.S. 115 (1991).

## II.      Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual

allegation,'" to credit "mere conclusory statements," or to accept "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 679.  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### III.    42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege that, "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *See Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *see also Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or her constitutional rights or privileges. *See Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *see also Quinn v. Nassau Cnty. Police Dep't*, 53 F.Supp.2d 347, 354 (E.D.N.Y. 1999)

(noting that Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution").

## DISCUSSION

### I.   Motion for Reconsideration

Plaintiff argues the Court committed clear error by misconstruing the Complaint to assert claims against Orange County pursuant to Section 1983. (Pl. Mot. ¶ 1; Goldberg Reply to County Defs. ¶ 2.) Plaintiff clarifies that all of his claims brought pursuant to Section 1983 are asserted against the individual Defendants Luckner and Sellers. (*Id.* ¶ 2.) Accordingly, Plaintiff argues his First through Fifth causes of action should not have been dismissed. (*Id.* ¶ 3.) Plaintiff further argues that because the Court improperly dismissed his federal claim, the Court's dismissal of the state claims for assault and excessive force was also inappropriate. (*Id.* ¶ 5.) Finally, Plaintiff asserts that the Court mischaracterized the Complaint's *respondeat superior* claims as premised on Luckner's Section 1983 liability, when they are instead premised on Luckner's liability for assault and excessive force under state law. (*Id.* ¶ 7.) In response, the County Defendants argue that the Court should adhere to its original determination as the Court's dismissal of the First through Fourth causes of action—and thus decision to not exercise supplemental jurisdiction over the state law claims—was not erroneous. (Lagitch Decl. ¶¶ 2, 7.) In its opposition, Trinity asks the Court to affirm the Opinion, or if the Court exercises supplemental jurisdiction, to dismiss the state law claims for assault and excessive force as asserted against Trinity. (Lane Decl. ¶ 11.)

The Court agrees that it erroneously misconstrued Plaintiff's Complaint as asserting federal claims against Orange County and improperly evaluated Plaintiff's claims under the *Monell* standard. It is clear from the face of the Complaint that Plaintiff asserts claims against (1) Luckner pursuant to Section 1983 for assault and excessive force under the Fifth and Eighth Amendments

as well as state law claims for assault and excessive force; (2) Sellers pursuant to Section 1983 for failure to intervene; and (3) Orange County and Trinity for vicarious liability pursuant to Plaintiff's state law claims against Luckner. Accordingly, the Court's prior ruling on the County Defendants' and Trinity's motions to dismiss is vacated, and the Court will now consider the merits of their respective motions.

## II.   Motion to Dismiss

The County Defendants move to dismiss Plaintiff's claims for (1) *Monell* and *respondeat superior* liability against Orange County; (2) the failure to intervene and failure to protect against Sellers; and (3) excessive force under the Fifth and Fourteenth Amendment.[5] Likewise, Trinity moves to dismiss Plaintiff's claims for assault and excessive force based on the doctrine of *respondeat superior*.[6]

As discussed above, the only claims Plaintiff asserts against the County Defendants and Trinity are those for state law assault and excessive force under the doctrine of *respondeat superior*. Plaintiff also asserts against Sellers claims for failure to intervene and deliberate indifference based on a failure to protect. Accordingly, the Court will address whether Plaintiff has sufficiently plead factual allegations to assert (1) claims for vicarious liability against Orange County and Trinity; and (2) claims for failure to intervene and failure to protect against Sellers.[7]

---

[5] The Court relies on the moving papers initially filed by Plaintiff and the County Defendants for the County Defendants' motion to dismiss: the County Defendants' Motion to Dismiss (ECF No. 29); their Memorandum of Law in Support ("County Defs. Mem.," ECF No. 31); their Reply ("County Defs. Reply," ECF No. 34); and Plaintiff's Memorandum of Law in Opposition ("Pl. Opp. to County Defs.," ECF No. 36).

[6] The Court relies on the moving papers initially filed by Plaintiff and Trinity for Trinity's motion to dismiss: Trinity's Motion to Dismiss (ECF No. 38); its Memorandum of Law in Support ("Trinity Mem.," ECF No. 40); its Reply ("Trinity Reply," ECF No. 42); and Plaintiff's Memorandum of Law in Opposition ("Pl. Opp. to Trinity," ECF No. 45).

[7] The County Defendants and Plaintiff also raise arguments regarding whether punitive damages are warranted. The parties agree that Orange County may not be held liable for punitive damages, but dispute whether punitive damages should be awarded against Sellers. (Orange County Defs. Reply at 7-8; Pl. Opp. to County Defs. at 9.) However, a determination regarding punitive damages would be inappropriate at this stage of the litigation. *Senior Health Ins. Co. of Pennsylvania v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 533 (S.D.N.Y. 2018) ("[W]hether to award

### A. *Respondeat Superior* Liability

Orange County and Trinity argue they cannot be held vicariously liable for Luckner's actions because he was neither employed by Orange County or working within the scope of his employment at Trinity. (County Defs. Mem. at 11-12; Trinity Mem. at 3-4.)

#### i.   *Whether Luckner Is An Employee of Orange County*

It is undisputed that Luckner was an employee of Trinity and not Orange County. (Compl. ¶ 4.) Plaintiff argues Luckner "stood in the shoes of a County employee," but cites to zero cases where a court found an employer vicariously liable under such a theory. (*See* Pl. Opp. to County Defs. at 7.)  It is well settled that an employer cannot be held vicariously liable for an individual who is not an employee. *Norwood v. Simon Prop. Grp., Inc.*, 200 A.D.3d 891, 894, 159 N.Y.S.3d 482 (2021) (dismissing vicarious liability claim against non-employer defendant). Accordingly, Orange County cannot be held vicariously liable for Luckner, whom it did not employ.

#### ii.   *Whether Luckner Acted Within the Scope of His Employment with Trinity*

"Under New York law, an employer may be vicariously liable for the tortious acts of employees only if those acts were committed in furtherance of the employer's business and within the scope of employment." *A.W. by E.W. v. New York Dep't of Educ.*, No. 19-CV-7011 (MKB), 2023 WL 7485182, at *3 (E.D.N.Y. Nov. 13, 2023) (quoting *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251, 739 N.Y.S.2d 348, 765 N.E.2d 844 (2002)). This applies whether an employee acts intentionally or negligently, "so long as the tortious conduct is generally foreseeable and a natural incident of the employment." *Phillips v. Uber Techs., Inc.*, No. 16 CIV. 295 (DAB), 2017 WL 2782036, at *5 (S.D.N.Y. June 14, 2017) (quoting *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 923, 933, 693 N.Y.S.2d 67, 715 N.E.2d 95 (1999), in turn citing *Riviello v. Waldron*, 47 N.Y.2d

---

punitive damages is "an intensely factual one," and is ill suited for dismissal this early in the litigation.") (citation and internal quotation marks omitted).

297, 304 (N.Y. 1979)). "[I]n cases involving a use of force, whether an employee is acting within the scope of employment requires consideration of whether the employee was authorized to use force to effectuate the goals and duties of the employment." *Id.* (citing *Rivera*, 34 N.Y.3d at 390).

"An employer will not be responsible for the torts of an employee who is not acting in furtherance of his employer's business or who acts only on personal motives." *A.W. by E.W.*, 2023 WL 7485182, at *4 (collecting New York state cases). That said, even if an employee's actions are driven by personal motives, intentional torts may still fall within the scope of employment, and an employee's motivation is only one factor for the court to consider in determining "whether such acts were foreseeable as a natural incidence of the employment." *Id.* (citing *M.K. v. State*, 216 A.D.3d 139, 191 N.Y.S.3d 538, 542 (App. Div. 2023), in turn quoting *Rivera*, 34 N.Y.3d at 389). If the act is foreseeable, the question becomes "whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Riviello*, 47 N.Y.2d at 302.

Plaintiff alleges that Luckner was a supervisor of Plaintiff, who was designated to work in the kitchen at OCCF to assist in the preparation and service of meals to other inmates as part of his jail duties. (Compl. ¶ 11.) The day prior to the assault, Plaintiff questioned Luckner about his decision to change Plaintiff's work assignment from the work he had been doing for the past two weeks, which resulted in Luckner verbally assaulting Plaintiff. (*Id.* ¶¶ 12-13.) The verbal assault continued to the next day, and at some point Luckner directed Plaintiff to accompany him away from other inmates to an area near the civilian bathroom, where there were no surveillance cameras. (*Id.* ¶¶ 14, 16.) Upon reaching that area, Luckner assaulted Plaintiff by putting him in a headlock and striking him multiple times about the face and body. (*Id.* ¶ 17.)

"New York Courts have long held that assaulting acts of employees are outside the scope of their employment." *Phillips*, 2017 WL 2782036, at *6 (collecting cases). In challenging this precedent, Plaintiff distinguishes the allegations of his complaint by alleging that (1) the cases cited by the County Defendants in support of their argument are resolved at the summary judgment stage and (2) unlike in those cases, in which courts found the physical altercations were due to personal animus, the Complaint plausibly alleges that the assault resulted from Luckner asserting his supervisory authority after Plaintiff challenged him. (Pl. Opp. to County Defs. at 7-8.) According to Plaintiff, a motion to dismiss is premature "[w]here, as here, the Complaint alleges that the assault was an assertion of supervisory authority and therefore within the scope of the employment." (*Id.* at 8.) For their part, the County Defendants dismiss Plaintiff's arguments as "entirely implausible" and "not supported by the law or the facts." (County Defs. Mem. at 11.) Of course, the Court notes that at the motion to dismiss stage, it must accept all allegations in the Complaint as true. That said, Plaintiff must still plead sufficient facts for the Court to plausibly infer that Luckner's assault was an assertion of his supervisory authority. Even construing the Complaint in the light most favorable to Plaintiff, the Court finds Plaintiff does not.

Plaintiff's argument that Luckner's actions that give to the Complaint was within the scope of his employment relies heavily on Luckner's motivation for the assault being directly related to his role of a supervisor. At the outset, the mere fact that Luckner was serving as Plaintiff's supervisor at the time of the assault is insufficient to establish that Luckner was acting within the scope of his employment. *Mahmood v. City of New York*, No. 01 CIV. 5899 (SAS), 2003 WL 21047728, at *4 (S.D.N.Y. May 8, 2003) ("[W]here an employee's conduct is brought on by a matter wholly personal in nature, the source of which is not job-related, his actions cannot be said to fall within the scope of his employment.") (citation omitted). And while Plaintiff claims in his

Opposition that Luckner verbally abused and physically assaulted Plaintiff "as an assertion of his authority," the Complaint contains no allegations of the sort. The factual allegations of the Complaint set forth the following four facts: (1) Plaintiff was assigned to the kitchen of OCCF to assist in meal preparation and service to other inmates under the direct supervision of Luckner (Compl. ¶ 11); (2) without cause or reason, Luckner changed Plaintiff's assignment from the work he had been doing for the past two weeks (*id.* ¶ 12); (3) when Plaintiff questioned Luckner about the change, Luckner became verbally hostile (*id.* ¶ 13); and (4) the next day, Luckner continued his verbal assault before eventually physical assaulting Plaintiff (*id.* ¶¶ 16-17). Nowhere in the Complaint does Plaintiff allege that the assault was the result of Luckner asserting his supervisory authority. Nor does Plaintiff plead sufficient factual allegations to permit the Court to reasonably infer as such. While certainly not impossible (or even implausible), the facts as plead give rise to speculation rather than a reasonable inference, and thus Plaintiff's factual allegations are insufficient to "nudge[] his claims . . . across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

Not only does Plaintiff fail to establish Luckner acted in furtherance of Trinity's interests, but Plaintiff also fails to show that Luckner's actions were reasonably foreseeable. While the Court agrees that an "assertion or establishment of authority is critical to a supervisor, particularly a supervisor of incarcerated workers," (Pl. Opp. to County Defs. at 7; Pl. Opp. to Trinity at 4), a supervisor physically assaulting a subordinate, particularly to the degree to which Luckner assaulted Plaintiff, goes beyond asserting or establishing his authority. Supervisors do not typically assault their subordinates. As discussed above, Luckner, a food services employee, was not employed in a position typically authorized to use force within a prison, like a correctional officer. Plaintiff also does not allege any facts for the Court to reasonably infer that his duties went beyond

those of kitchen and food service to include the use of force. Accordingly, Plaintiff's violence towards other inmates could not have been reasonably anticipated by Trinity.

In fact, the presence of Sellers, a correctional officer, further supports the reasonable inference that Luckner, a kitchen employee, was not expected to discipline or otherwise physically harm the inmates. Plaintiff himself asserts that Sellers was "assigned to the OCCF kitchen and food service area to assure the safety of both civilian employees and the inmates." (Compl. ¶ 5.) It appears that in the event force was needed, Sellers was assigned to the food services and kitchen area to act if necessary. Plaintiff has thus failed to allege any facts giving rise to a reasonable inference that Luckner's assault of Plaintiff was within the scope of his employment with Trinity. *Yeboah v. Snapple, Inc.*, 286 A.D.2d 204, 729 N.Y.S.2d 32 (2001) ("An employer cannot be held vicariously liable for an alleged assault where the assault was not within the scope of the employee's duties, and there is no evidence that the assault was condoned, instigated or authorized by the employer.").

Finally, the Court also notes the particularly vicious nature of the assault, resulting in a facture to the metal plate (that had been inserted due to a prior injury) in his jaw, a black eye, bruising, and lower back injuries. (Compl. ¶ 19.) It is difficult for the Court to consider such a brutal beating within the scope of Luckner's job in food service. *Rivera v. State*, 34 N.Y.3d at 391 ("[T]he gratuitous and utterly unauthorized use of force was so egregious as to constitute a significant departure from the normal methods of performance of the duties of a correction officer as a matter of law. This was a malicious attack completely divorced from the employer's interests."). Even if Plaintiff had plead sufficient facts that Luckner had been motivated to assault Plaintiff to assert his supervisory authority in furtherance of his employer's business interests, Plaintiff would certainly need to plead more facts to permit a reasonable inference that Luckner's

sudden and vicious physical assault was expected, required, authorized, or otherwise foreseeable as part of Luckner's job duties.

While Plaintiff is correct that "the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is one for the jury," *Riviello*, 47 N.Y.2d at 302, if "a court a court takes as true all the facts alleged by plaintiff and concludes that the conduct complained of cannot be considered as a matter of law within the scope of employment, then the court must dismiss the complaint for failure to state a claim. *Haybeck v. Prodigy Services Co.*, 944 F.Supp. 326, 329 (S.D.N.Y.1996) (citations omitted). Plaintiff has failed to plead any facts permitting the Court to reasonably infer that Luckner was driven by business rather than personal motives, that it was customary or expected for Luckner to use force in his position, or that Luckner's use of force was reasonably foreseeable by Trinity. Thus, even drawing all reasonable inferences in favor of Plaintiff, no reasonable jury could conclude that Luckner's assault of Plaintiff was within the scope of his employment with Trinity.

Accordingly, the Court grants the County Defendants' and Trinity's motions to dismiss Plaintiff's claims for excessive force and assault under the theory of *respondeat superior*.[8]

### B.  Plaintiff's Failure to Intervene Claim against Sellers

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Sanabria v. Detective Shawn Tezlof*, No. 11-CV-6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). A prison official who fails to intervene on behalf on an individual whose constitutional rights are being

---

[8] Because the Court dismisses Plaintiff's *respondeat superior* claims on this ground, the Court declines to address Trinity's argument that that Plaintiff's excessive force claim under the doctrine of *respondeat superior* also fails because Plaintiff fails to allege any legal basis for the claim under state law. (*See* Trinity Mem. at 4-5.)

violated may be held liable for the failure to intervene. *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) ("An officer who fails to intercede in the use of excessive force or another constitutional violation is liable for the preventable harm caused by the actions of other officers.") (quoting *Anderson*, 17 F.3d at 557). "However, there can be no failure to intervene claim without a primary constitutional violation." *Sanabria*, 2016 WL 4371750, at *5 (citation and quotation marks omitted).

The County Defendants seek to dismiss Plaintiff's failure to intervene claim against Sellers on the grounds that Luckner is not a "state actor" and therefore cannot be held liable for use of excessive force or any of the claims pursuant to Section 1983.[9] (County Defs. Mem. at 5.) Put another way, the County Defendants argue because Luckner cannot be held liable for a constitutional violation (the assault and excessive force claims), then Sellers cannot be held liable for failure to intervene in the assault. (*Id.* at 8.) Although courts have deemed the provision of food a state function, the County Defendants argue, Plaintiff's claims against Trinity and the County Defendants are completely unrelated to the provision of said services. (*Id.* at 7.) The Court again sides with Plaintiff.

Generally, private entities are not subject to Section 1983. *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 471 (S.D.N.Y. 2006). The actions of a private entity are attributable to the state when there exists "such a close nexus between the state and the challenged action that the state is responsible for the specific conduct of which the plaintiff complains." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (internal quotation marks and citation omitted). The Second Circuit employs the following tests: "(1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when

---

[9] "In an abundance of caution," Trinity incorporates the County Defendants' arguments that Luckner is not a state actor in its motion. (Trinity Mem. at 1 n.1.)

the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the state," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the state," ("the public function test")." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2014).

To satisfy the public function test, "private actors must be delegated functions that were traditionally under the exclusive authority of the state." *Sybalski*, 546 F.3d at 259. As the County Defendants acknowledge, courts have routinely held that private entities perform a "public function" in providing meals to inmates, and therefore constitute state actors. *Salgado v. DuBois*, No. 17-CV-6040 (NSR), 2019 WL 1409808 at *9 (S.D.N.Y. Mar. 28, 2019) (collecting cases). Trinity, therefore, is a state actor pursuant to Section 1983. That said, Plaintiff has failed to plead sufficient facts for the Court to find Luckner acted "under the color of state law" pursuant to Section 1983 when he assaulted Plaintiff.

Plaintiff asserts that Trinity, contracted by Orange County to provide food services to inmates at OCCF, "was entwined with Orange County policies and performed a public function delegated by the State," such that Trinity and its employees were state actors under Section 1983. (Compl. ¶ 3.) Plaintiff again hinges its argument on its theory that Luckner's supervisory position over Plaintiff was a public function, therefore Luckner was acting under the color of state law when he assaulted Plaintiff to assert his supervisory authority over Plaintiff. (Pl. Opp. to County Defs. at 4.) However, the mere fact that Luckner was employed by Trinity—undisputedly a state actor by providing food services to OCCF pursuant to a contract—is insufficient to establish that he was acting under the color of state law. That Luckner was acting in his capacity as a "civilian supervisor" of the OCCF kitchen staff also cannot establish that he was acting under the color of

state law. (*See* Pl. Opp. to County Defs. at 3.) Rather "the crucial relationship for a finding of state action is between the governmental entity and the *action* taken by the private entity, not the [relationship] between the governmental entity and the private *actor*." *Young v. Halle Hous. Assocs., L.P.*, 152 F. Supp. 2d 355, 364 (S.D.N.Y. 2001) (emphasis in original); *see also, e.g.*, *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 737-38 (S.D.N.Y. 2006) (child care agency authorized by statute to care for neglected children acted under the color of state law because the actions at issue related to the handling of children placed in the agency by the city and were actions that would have been performed by the city); *Kia P. v. McIntyre*, 235 F.3d 749, 756 (2d Cir. 2000) (private hospital not a state actor in providing medical care to a baby, but became a state actor in refusing to release the child after it was medically cleared, as part of the state's reporting and enforcement machinery for detection and prevention of child abuse and neglect). Relying on this principle, the Court cannot find that Luckner is a state actor for the purposes of Plaintiff's Complaint.

The alleged actions of Luckner that give rise to Plaintiff's claims are wholly unrelated to the provision of food services. In no way does Luckner's assault of Plaintiff "flow[] directly from the obligations of the [state of New York] and is performed under its supervision." *Salgado*, 2019 WL 1409898, at \*9 (citation omitted). *Pagan v. Westchester Cnty.*, No. 12 CIV. 7669 PAE JCF, 2014 WL 982876 (S.D.N.Y. Mar. 12, 2014), *on reconsideration*, No. 12 CIV. 7669 PAE SN, 2015 WL 337403 (S.D.N.Y. Jan. 26, 2015) ("There must be such a close nexus between the state and the challenged action that the state is responsible for the specific conduct of which the plaintiff complains."). As the County Defendants put it, "[P]laintiff cannot plausibly maintain that Luckner was performing a public function when he independently elected to intentionally assault [Plaintiff]." (County Defs. Mem. at 7.) Plaintiff again argues that because Luckner was acting in

his supervisory capacity as a provider of food services to the inmates, he was acting under the color of state law. However, the Court reiterates that Plaintiff has failed to plausibly allege that Luckner was asserting his supervisory authority when attacking Plaintiff.

Moreover, the Court's findings in its prior Opinion are still applicable here. "Even if the Court concluded that Luckner's assault of Plaintiff represented a primary violation of Plaintiff's constitutional rights, as is necessary to plausibly state a failure to intervene claim pursuant to Section 1983, Plaintiff has not pled sufficient factual content for the court to draw the reasonable inference that Sellers failed to intervene to prevent the assault." *Muniz*, 2023 WL 2648776, at *5. Plaintiff's factual allegations are still insufficient to plausibly state a claim against Sellers for failure to intervene, and thus the Court grants the County Defendants' motion to dismiss this claim.

### C.  Plaintiff's Deliberate Indifference Claim against Sellers

Finally, the County Defendants seek to dismiss Plaintiff's claim for deliberate indifference based on a failure to protect. Although this claim is not explicitly stated in the Complaint, in their memorandum of law in support of their motion to dismiss, the County Defendants construed the Complaint as alleging a claim for deliberate indifference and characterized the claim as one for deliberate indifference based on a failure to protect. (County Defs. Mem. at 8-11; Pl. Opp. to County Defs. at 5-7.) As such, the Court analyzes the claim as characterized by the parties.

The Constitution provides protections to jailed individuals against "deliberate indifference" to "conditions that pose a substantial risk of serious harm" under the Eight Amendment or the Fourteenth Amendment. *Howard v. Brown*, No. 15 CIV. 9930 (ER), 2018 WL 3611986, at *4 (S.D.N.Y. July 26, 2018) (citation omitted). For claims alleging a deliberate indifference based on a failure to protect, the Court must apply the two-prong framework. That is, the inmate must show (1) that the failure to protect the inmate was sufficiently serious such that it

caused "an unquestioned and serious deprivation of basic human needs" and (2) that the defendant acted with a "sufficiently culpable state of mind." *Leath v. Cnty. of Orange*, No. 18-CV-7318 (NSR), 2020 WL 4016530, at *3 (S.D.N.Y. July 15, 2020) (citing *Rosen v. City of New York*, 667 F. Supp. 2d 355, 359–360 (S.D.N.Y. 2009)). Pretrial detainees properly bring their deliberate indifference claims pursuant to the Due Process Clause of the Fourteenth Amendment, while convicted prisoners bring their claims pursuant to the Eighth Amendment. *Howard*, 2018 WL 3611986, at *4.

While the first prong is evaluated the same under the Eighth and Fourteenth Amendment, when evaluating the second prong, the Eight Amendment applies a subjective standard, while the Fourteenth Amendment applies an objective standard. To establish the second prong under the Eighth Amendment, the inmate must prove the defendant-official knew and disregarded an excessive risk to inmate health or safety. *Howard*, 2018 WL 3611986, at *4. In contrast, when using the objective standard under the Fourteenth Amendment, the plaintiff must show the defendant-official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). Here, although he was also being held on various criminal charges, Plaintiff explicitly states he had been convicted of a crime and was awaiting transfer to another facility when the assault occurred. (Compl. ¶ 10.) Because Plaintiff had been convicted on federal charges at the time of the assault, Plaintiff's claims are more appropriately evaluated under the Eighth rather than Fourteenth Amendment. *Darnell*, 849 F.3d 17, 29 (reasoning that "pretrial detainees have not been convicted of a crime and thus

may not be punished in any manner") (citation omitted). This is immaterial, however, as Plaintiff's claims fail under both standards.

Generally, a failure to protect claim under the Eighth Amendment requires a Plaintiff prove the defendant-officer knew of a prior altercation between Plaintiff and his assailant or of threats made against Plaintiff. *Id.* Similarly, a plaintiff may sufficiently plead a failure to protect claim under the Fourth Amendment "when the inmate informed corrections officers about a specific fear of assault and was then assaulted." *Scott v. Westchester Cnty.*, 434 F. Supp. 3d 188, 199 (S.D.N.Y. 2020) (citation and internal quotations omitted). Here, Plaintiff merely alleges that, "[u]pon information and belief," (1) Sellers knew of the verbal taunts and insults Luckner made towards Plaintiff and (2) Sellers was in a position to hear the assault but failed to intervene (Compl. ¶¶ 15, 18.) Plaintiff has made no allegations that Sellers knew or should have known that Luckner had made any specific or direct threats against Plaintiff, that Luckner or Plaintiff had any prior physical altercations, that Luckner had previously physically assaulted any other inmate, or that Plaintiff had informed Sellers he had concerns about being assaulted by Luckner. Granted Plaintiff does allege that Sellers was aware of Luckner's verbal taunts and insults against Plaintiff prior to the assault. However, this allegation is insufficient to demonstrate that Sellers was or should have been aware of any particular risk to Plaintiff's physical safety. Barring allegations of specific threats, warnings, or a pattern behavior and/or Sellers's knowledge thereof, Plaintiff has failed to plead Sellers knew or should have known of a substantial risk of serious harm to Plaintiff or that Sellers recklessly failed to mitigate the risk of harm to Plaintiff.

Furthermore, Plaintiff must do more than assert that Sellers was aware of Luckner's verbal taunts directed towards Plaintiff and was in a position to hear the assault "upon [Plaintiff's] information and belief." Plaintiff must also provide facts upon which that belief is founded. *Prince*

19

*v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006) ("[A]llegations pled on information and belief are proper if accompanied by a statement of facts upon which the belief is founded.") (citing *Shopping Mall Investors, N.V. v. E.G. Frances & Co., Inc.*, No. 84 Civ. 1469, 1985 WL 210 (S.D.N.Y. Jan.23, 1985)). Plaintiff's tenuous and conclusory allegations are therefore insufficient to support his claim for deliberate indifference for failure to protect.[10]

The Court notes that Plaintiff states in his Opposition that it had "inadvertently omitted" a state law claim for deliberate indifference against the County Defendants to hold them vicariously liable for the actions of Sellers. (Pl. Opp. to County Defs. at 7 n.2.) As the Court dismisses Plaintiff's claim for deliberate indifference against Sellers, any claim against the County Defendants seeking to hold them vicariously liable for such claim is also dismissed. *Harsco Corp. v. Segui*, 91 F.3d 337, 349 (2d Cir. 1996) (affirming the district court's dismissal of *respondeat superior* claims because plaintiff's claims had "no surviving theory of liability"); *Spence v. City of New York*, No. 1:20-CV-10090 (LTS), 2022 WL 4537946, at *3 (S.D.N.Y. Sept. 28, 2022) ("*Respondeat superior* is not an independent cause of action, but a theory of liability that must attach to an underlying claim.") (citations omitted).

## CONCLUSION

The Court grants Plaintiff's motion for reconsideration and vacates the Opinion granting dismissal of Plaintiff's Complaint. The Clerk of the Court is directed to reopen the case. Upon reconsideration of the motions to dismiss, both the County Defendants' and Trinity's motions to dismiss are granted. All claims against the County Defendants and Trinity are dismissed without prejudice.

---

[10] Finally, under either the subjective or objective standard, negligence is insufficient to state a claim for deliberate indifference pursuant to Section 1983. *Molina v. Cnty. of Westchester*, No. 16 CV 3421 (VB), 2017 WL 1609021, at *4 (S.D.N.Y. Apr. 28, 2017) (citing *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 2000)).

Plaintiff is granted leave to file an Amended Complaint on or before April 14, 2024. Plaintiff is advised that the Amended Complaint will replace, not supplement, his Complaint, and so any claims that he wishes to pursue must be included in, or attached to, the Amended Complaint. Should Plaintiff not file an Amended Complaint by this date, Plaintiff's claims will be dismissed with prejudice. In the event Plaintiff files an Amended Complaint on or before April 14, 2024, Defendants are directed to answer, or otherwise respond to, the Amended Complaint on or before May 5, 2024.

The Clerk of the Court is directed to terminate the motion at ECF No. 58.

SO ORDERED:

Dated:  March 14, 2024
        White Plains, New York

_____
        NELSON S. ROMÁN
        United States District Judge